1. Where a dividing line between coterminous owners is indefinite, unascertained, or disputed, the owners may by parol agreement duly executed establish the line, which line will control their deeds, notwithstanding the statute of frauds. Hart v. Carter, 150 Ga. 289, 290
(103 S.E. 457); Robertson v. Abernathy, 192 Ga. 694, 697
(16 S.E.2d 584). This rule can not be given necessary and conclusive application under the facts of this case, where according to the testimony of the plaintiff she agreed to be bound by the running of the line, on the theory and under the alleged statement of the other party that the lot would be equally divided, she, the plaintiff, to have the "east half" under her deed, and the defendant to have the "west half" under his deed; and that her temporary and brief acquiescence in the line as actually run was based on erroneous information that the survey had thus cut the lot in half. Accordingly, a verdict in favor of defendant was not demanded on this theory.
2. "Where a deed described the property conveyed as containing ninety acres, more or less, and being the north half of a designated lot of land, and it appeared that the land lot in question contained more than two hundred acres, the description by the number of acres should give way to that by the subdivision of the land lot." Collinsville Granite Co.
v. Phillips, 123 Ga. 830, 831 (11) (51 S.E. 666).
3. Under the rule stated in the preceding division of the syllabus, the charge of the court with respect to the words "more or less," as set forth in the statement of facts, was calculated to influence the jury adversely to the rights of the plaintiff. This is true for the reason that, under the rule of law above stated, the plaintiff was entitled to the "east half" of the lot, containing 64 acres, more or less, and the defendant was entitled to the west half of said lot, containing 80 acres, more or less, and such a division of the lot into eastern and western halves, in the absence of any actual recognized and defined boundary *Page 150 
being approved by the jury, takes precedence over the estimated acreage as set forth in the respective deeds.
Judgment reversed. All the Justicesconcur.
 No. 15787. APRIL 17, 1947.
 STATEMENT OF FACTS BY JENKINS, CHIEF JUSTICE.
Mrs. Oliver instituted suit against Daniel, praying that he be restrained from cutting timber on land alleged to belong to her, the allegation being that he had crossed over the dividing line between them in accordance with and by virtue of a survey made by Rink, the county surveyor. By a deed to Daniel, he was conveyed the "west half" of lot No. 324, containing 80 acres, more or less. By a deed to Mrs. Oliver, she was conveyed the "east half" of lot No. 324, containing 64 acres more or less. It appears that a normal lot in this area contains 160 acres, whereas according to the survey and plat by one Cole, employed by Mrs. Oliver after her suit had been instituted, the lot contained only 127.9 acres. It appears that Daniel, wishing to cut the timber on his portion of the lot went to Mrs. Oliver and proposed that the county surveyor run and mark the dividing line between them through the woods. He testified on the trial that Mrs. Oliver had agreed to abide by such a survey, provided, Daniel would pay the cost of having it made. He also testified that she had approved the line after it had been run, and that Mrs. Oliver had an agent present at the survey. Mrs. Oliver testified that, when Daniel came to see her about the survey, he stated that "he had the west half and I had the east half of the lot; and so I told him to go ahead and that I might lose or gain a tree, but that it would be all right with me to know exactly where the line was; and I said go ahead and it does not matter to me if you get half of our house or barn." She testified that she had approved the line after it had been run; "I was satisfied with the line when Mr. Carlock (an adjacent landowner also present at the survey) told me they measured it and ran through the middle of the lot." She testified: That she had made no objection when Mr. Daniel after running the line proceeded to set down his sawmill. "I thought it was in the middle." On Thursday Mr. Autry (her agent) told her that they ran the line on Monday and that she would have to bring suit. She had enjoined him when he began cutting trees. Mr. Autry testified *Page 151 
in effect that Rink (then deceased) did not run the line by dividing it into two equal portions, one the east half, the other the west half, but that he merely sought to allot Mrs. Oliver 64 acres, saying that she would be satisfied with that. There was a good deal of testimony from general reputation in the neighborhood as to where the dividing line had been recognized to be, but this testimony does not seem to establish positively either the Rink survey or the Cole survey as being on any well-recognized line, or, as we interpret the evidence, that any well recognized dividing line in accordance with the Rink survey had in fact existed. Mr. Daniel testified as follows: "If the line as run by Rink does not give her (plaintiff) half of the lot, I still want her to have her part. If her deed calls for 64 acres, then I want her to have that. Then if it gave me 80 acres, there would be a strip in there that belongs to somebody. It would not belong to me and her. If it belonged to somebody, I don't think it would belong to me. I don't know who it would belong to. I know that all I am entitled to is one-half of that lot and that is all that I am contending for." No plat as made by Rink, the deceased county surveyor appears in evidence; but, according to the evidence of Autry, it would appear that he merely sought to set apart 64 acres to Mrs. Oliver, and to run the line accordingly, whereas she contends that, according to his survey and the verdict sustaining it, Daniel was allotted 75 acres and she was allotted only 53 acres; in that Rink, starting from the northeast and then from the southeast corners, sought to run off 64 rods, and then connected these points through.
Exception is taken to the charge of the court as follows: "In this case, gentlemen, the quantity `more or less' would simply mean that the number of acres is indefinite and not fixed and determined in the deed. But there is a quantity of `more or less' in both the deeds in this case — the plaintiff's and the defendant's deeds; and you will apply that qualification `more or less' to the evidence in this case and see whether or not, in applying that qualification, it will aid you in determining, and making allowances on the part of both the plaintiff and the defendant in fixing and determining where the line between these two parties should be — whether it means, on the one hand, that one party will have only 64 acres and the other party 80 acres, or whether the party having the 80 acres should not have 80 acres and the other party *Page 152 
should have more than 64 acres — you will investigate along that line and make it elastic, and make it applicable to both parties involved in this case. To illustrate what I mean, and not by way of suggestion, you take the quantity of `more or less' in determining where the line should be fixed, as contended by the defendant on the Rink line, and whether that would give, if the line was fixed as Rink's line, whether that would give the defendant 80 acres or not. If it gave him 80 acres — and then by way of further illustration, if it only left 64 acres on the east side, whether that was the intent and purpose or quantity clause in each of these deeds, or whether the quantity clause, `more or less' in each deed meant the east half of the lot in one instance and the west half of the lot in the other; whether that means the equal distance line and the east and west adjoining line on the entire lot, taking into consideration, as I have already charged you, any marks or tree or corners. In other words, it is a question for you to say where the dividing line is between the two parties in this case."
Among the exceptions taken to this charge is the following: "(a) The court, in undertaking to define the meaning of the words `more or less' as used in the deeds of the respective parties, gave an erroneous construction of the meaning of these words as used in said deeds. Movant contends that the words `more or less,' as used in the deeds introduced in evidence by the parties to the cause, properly construed, meant only that said words would cover any deficiency in acreage of the west half of the lot claimed by the defendant, or the east half of the lot claimed by movant, not so gross as to justify a suspicion of wilful deception on the State amounting to fraud, but in no case could these words, as used in the deeds of the respective parties, be so construed as to give either of the parties any additional acreage, other than that as contained in the east half of the lot or the west half of the lot. (b) Movant contends that that portion of the charge which was left to the jury to determine whether one party will have only 64 acres and the other party 80 acres, or whether the party having the 80 acres should not have 80 acres and the other party should have more than 64 acres, was erroneous, for the reason that it left the jury to determine whether one of the parties should have more than one-half of the lot. Movant contends that, since the deed of the defendant and the deed of movant each call for one-half *Page 153 
of the lot in question, both the defendant and the movant were entitled to no more than one-half of the lot, and the words `more or less,' as used in the deeds of the respective parties, cannot be construed so as to give either of the parties more than one-half of the lot, whether this one-half contained 80 acres, more than 80 acres, or less than 80 acres. (c) Said charge, as given, was prejudicial to movant for the reason that while her deed called for the east half of the lot, containing 64 acres, more or less, the deed of the defendant called for the west half of the lot, containing 80 acres, more or less, and, since the deed of the defendant called for a greater number of acres than that of movant, the charge as given permitted the jury to consider the greater number of acres, as called for in the deed of the defendant, in determining whether the dividing line between the parties should be the middle of the lot or whether the defendant should have the greater portion of the lot than movant. (d) Movant contends that, under the evidence as introduced on the trial of the case, she was entitled to recover one-half of the lot in question, whether the acreage therein be more or less than 64 acres; that defendant is not entitled to more than one-half of the lot, whether the acreage therein be more or less than 80 acres; and that the charge, as given by the court to the jury, permitted the jury to take into consideration the number of acres as called for in the deeds of the respective parties in determining what proportion of the lot should go to each of the parties. (e) Movant contends that the court should have instructed the jury, without any qualification thereof, that whether a deed conveys the east half of the lot or the west half of the lot, it cannot be construed to convey any greater portion of said lot than one-half thereof, irrespective of the recitals of the deeds as to the number of acres conveyed. (f) Said charge as given was confusing and misleading, and did not submit to the jury a correct statement of the law on the questions involved, . . which the court undertook to try to set out. (g) Movant avers that said charge was erroneous and not sound as an abstract principle of law."